ZACHARY, Judge.
 

 *545
 
 Pierre Je Bron Moore (defendant) appeals from the judgment entered upon his convictions of fleeing to elude arrest, resisting an
 
 *199
 
 officer, driving without a driver's license, failing to heed a law enforcement officer's blue light and siren, speeding, and reckless driving. On appeal, defendant argues that the trial court erred by denying his motion for a continuance, by allowing the State to introduce into evidence a copy of a convenience store surveillance video, and by denying his motion to suppress statements made by him. We conclude that the trial court did not err by denying defendant's motion for a continuance or his motion to suppress. We further conclude that the trial court erred by admitting the video, but that its admission was not prejudicial.
 
 *546
 

 I. Factual and Procedural Background
 

 On 6 July 2015, the Grand Jury of Orange County returned indictments charging defendant with the felony of fleeing to elude arrest and with the related misdemeanors of resisting an officer, reckless driving to endanger, driving without a license, speeding, and failing to heed a law enforcement officer's blue light and siren. Mr. George Doyle was initially appointed to represent defendant, but was permitted to withdraw on 9 March 2016, at which time defendant's trial counsel, Ms. Kellie Mannette, was appointed to represent him. The charges against defendant came on for trial before a jury at the 18 April 2016 criminal session of Superior Court for Orange County, the Honorable R. Allen Baddour, Jr. presiding. Defendant did not testify or present evidence at trial. The State's evidence tended to show, in relevant part, the following.
 

 During the early morning hours of 21 May 2015, Carrboro Police Officer David Deshaies was on patrol on Jones Ferry Road, in Carrboro, North Carolina. As Officer Deshaies drove past a Kangaroo gas station and convenience store, he noticed a man getting out of the driver's side of a silver Nissan Altima. He recognized the man as defendant from other encounters during the previous two years, and noticed that defendant was wearing a white cloth on his head. A month earlier, Officer Deshaies had attempted to stop a similar car for speeding but the car fled and, because the officer was unable to identify the driver, no one was charged as a result of that incident. At that time, Officer Deshaies had noted that the Altima had a 30 day temporary tag. Upon seeing defendant getting out of a similar silver Nissan Altima on 21 May 2015, Officer Deshaies pulled into the parking lot of the convenience store and checked the license tag number. He learned that the car, which was owned by someone other than defendant, had been issued a license plate about ten days earlier.
 

 Officer Deshaies suspected that the Altima was the same vehicle that he had tried to stop a month earlier. When he saw defendant and another man enter the convenience store, he contacted other officers, and they agreed to watch the vehicle when it left the store and to stop the car if the driver violated any traffic laws. Officer Deshaies then drove a short distance from the store. Because he was parked several hundred yards from the gas station, Officer Deshaies did not see who was driving when the car left the store's parking lot.
 

 After the Altima left the parking lot, it drove past Officer Deshaies at a speed above the legal speed limit. The officer contacted the law enforcement center to inform the dispatch officer that he was going to stop the Nissan. When Officer Deshaies activated his blue light and siren, the
 
 *547
 
 car accelerated rapidly away from him. Officer Deshaies followed the car for several miles, during which time he saw it run a red light and accelerate to speeds of over 110 miles per hour. Officer Deshaies chased the car for several minutes before his supervisor directed him to discontinue the attempt to stop the vehicle. Officer Deshaies then returned to the Kangaroo gas station and convenience store where he had first noticed the car. Officer Deshaies described defendant's appearance to the store's clerk, who told the officer that he knew a person who fit the description, and that he would recognize the person if he saw him again.
 

 On 22 May 2015, Officer Deshaies returned to the Kangaroo store and asked the manager if he could review the store's video surveillance footage from the night before. Officer Deshaies was permitted to view the video footage. However, the manager of the store told Officer Deshaies that the ownership of the Kangaroo store was in the process of
 
 *200
 
 being transferred to a different company and that, as a result of corporate policies involved in the transfer of ownership, the manager of the Kangaroo store lacked the authority to make a copy of the video. Officer Deshaies then used the video camera in his cell phone to copy the video, and downloaded the video from his cell phone to a computer to make a digital copy. Officer Deshaies testified that the video was an accurate representation of the video that he reviewed at the store.
 

 The trial court allowed the copy of the surveillance video to be played for the jury, over defendant's objection. The video depicts footage of the convenience store premises taken by four different cameras recording views of the parking lot and the interior of the store. The footage includes images of a man with a white cloth on his head getting out of the driver's side of a car. Officer Deshaies identified this man as defendant. Officer Deshaies testified that he had personally observed defendant get out of the car but that he had moved his patrol vehicle out of view of the store before defendant and the other man got back into the car and drove away. The video also showed defendant getting into the driver's side of the car before it left the parking lot.
 

 The clerk testified that on 21 May 2015 he was employed at the Kangaroo gas station and convenience store on Jones Ferry Road, in Carrboro. Defendant had been a "regular customer" at the store and at around 1:00 a.m. on 21 May 2015, defendant and another man made a brief visit to the store. The clerk identified defendant in court and on the copy of the surveillance video.
 

 Carrboro Police Officer Russell Suitt testified that he and defendant had attended high school together. Officer Suitt was not involved in the
 
 *548
 
 car chase on 21 May 2015, but the next day he learned that there were outstanding warrants for defendant's arrest. That morning, Officer Suitt saw defendant walking on Homestead Road in Chapel Hill. Officer Suitt stopped defendant and informed him that there were warrants for his arrest. Defendant was arrested and placed in Officer Suitt's patrol vehicle without incident. As Officer Suitt was transporting defendant to the law enforcement center, another officer spoke to Officer Suitt over the police radio in the car, and asked Officer Suitt if he had information about the location of the vehicle that was involved in the incident the night before. Defendant spoke up from the back seat of the patrol vehicle and said that the car was in a secret location. Defendant also told Officer Suitt that he had sped away from the law enforcement officers the night before because he feared being charged with impaired driving.
 

 On 20 April 2016, the jury returned verdicts finding defendant guilty of the charged offenses. The trial court arrested judgment on the charges of speeding and reckless driving, and consolidated the remaining charges for sentencing. The court sentenced defendant to a term of eight to nineteen months' imprisonment, to be served at the expiration of another sentence that defendant was then serving for an unrelated charge. Defendant noted a timely appeal to this Court.
 

 II. Denial of Motion for Continuance
 

 A. Standard of Review
 

 On appeal, defendant argues that the trial court erred by denying his motion to continue the trial of this case, on the grounds that (1) the trial court lacked the authority to enter an order that overruled another superior court judge, and (2) the denial of defendant's continuance motion deprived him of his constitutional right to the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 23 of the North Carolina Constitution. N.C. Gen. Stat. § 15A-952(g) (2015) addresses a trial court's determination of whether to allow a continuance and provides that "the judge shall consider at least the following factors in determining whether to grant a continuance:"
 

 (1) Whether the failure to grant a continuance would be likely to result in a miscarriage of justice; [and]
 

 (2) Whether the case taken as a whole is so unusual and so complex, due to the number of defendants or the nature of the prosecution or otherwise, that more time is needed for adequate preparation[.]
 

 *201
 

 *549
 
 The general standard of review of a trial court's ruling on a continuance motion is well-established:
 

 It is, of course, axiomatic that a motion for a continuance is ordinarily addressed to the sound discretion of the trial judge whose ruling thereon is not subject to review absent a gross abuse. It is equally well established, however, that, when such a motion raises a constitutional issue, the trial court's action upon it involves a question of law which is fully reviewable by an examination of the particular circumstances of each case. Denial of a motion for a continuance, regardless of its nature, is, nevertheless, grounds for a new trial only upon a showing by defendant that the denial was erroneous and that [his] case was prejudiced thereby.
 

 State v. Searles
 
 ,
 
 304 N.C. 149
 
 , 153,
 
 282 S.E.2d 430
 
 , 433 (1981) (citations omitted).
 

 B. Trial Court's Authority to Deny Defendant's Motion to Continue
 

 Defendant argues that the trial court's denial of his motion to continue constituted an improper overruling or reversal of an earlier order or ruling by another judge. Defendant is correct that:
 

 The well established rule in North Carolina is that no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action.
 

 Calloway v. Motor Co
 
 .,
 
 281 N.C. 496
 
 , 501,
 
 189 S.E.2d 484
 
 , 488 (1972). In this case, defendant asserts that a statement by the judge who presided over a pretrial hearing constituted a "ruling" or "decision" which could not be modified by another superior court judge. Upon careful consideration of the facts of this case, we conclude that this argument lacks merit.
 

 Following defendant's arrest on 22 May 2015, Mr. George Doyle was appointed to represent defendant on the charges that are the subject of this appeal, and that were charged in Orange County Files Nos. 15 CRS 51309 and 51310. The record indicates that Mr. Doyle also represented defendant on what is described by the parties as an unspecified drug-related offense that was charged in Orange County File No. 14 CRS 52224. Defendant was later charged with first-degree murder in an unrelated case. On 9 March 2016, defendant appeared in superior court before the Honorable James E. Hardin, Jr. During this hearing, Mr. Doyle
 
 *550
 
 moved to withdraw as counsel and asked that Ms. Kellie Mannette, who was defendant's counsel on the murder charge, be appointed to represent defendant on the less serious charges on which Mr. Doyle had been appointed to represent defendant. During discussion of this possibility, Judge Hardin made a comment indicating a willingness to continue the trial of the charges on which Mr. Doyle represented defendant. On appeal, defendant contends that this remark constituted a decision or ruling establishing that defendant's trial would be continued. We disagree, and conclude that this preliminary and informal remark was clearly disavowed by Judge Hardin's explicit ruling that the case was not being continued and that any decision about a continuance would be made by the judge who presided over the trial.
 

 We have set out a significant portion of the transcript of the hearing in order to explain the reasoning behind our conclusion that Judge Hardin did not order or rule that the present case be continued. We are not holding that Judge Hardin issued an oral ruling or order that was not reduced to writing, but that the court
 
 did not
 
 order that the case was continued. At the outset of the hearing, the prosecutor informed the court of the issues for resolution:
 

 THE COURT: Yes, sir.
 

 MR. PROCTOR: ... Thank you. This is Pierre Moore. The matter that appears on the docket is ... first degree murder. Ms. Mannette was appointed in district court. This is technically his first appearance in superior court, so we need to address that. And then [the] State has filed notice for a Rule 24 [hearing], and I have an order continuing that to September 13th[.] ...
 

 THE COURT: May I have that file?
 

 *202
 
 MR. PROCTOR: And I believe he has some other [criminal charges] that Mr. Doyle would like to address the counsel issue on.
 

 Judge Hardin then questioned defendant and determined that he wished to be represented by his appointed counsel, Ms. Mannette, on the charge of first-degree murder. The next matter addressed by the court was the State's motion to continue a pretrial Rule 24 hearing in the murder case for six months, until September 2016:
 

 THE COURT: All right. [Defendant's representation by Ms. Mannette on the charge of first-degree murder is] allowed,
 
 *551
 
 Madam Clerk. Now, do I understand with respect to the Rule 24 hearing, you want to do that when?
 

 MR. PROCTOR: I would just like to continue that to September 13th of 2016. I do have an order that, I believe, would be consented to, if I may approach.
 

 THE COURT: Ms. Mannette?
 

 MS. MANNETTE: We do consent.
 

 ...
 

 THE COURT: That's allowed, Madam Clerk. The Rule 24 hearing will be conducted on-during the week of September the 13th.
 

 The next matter for consideration was a defense motion pertaining to forensic testing of certain evidence. The prosecutor explained that "Ms. Mannette had filed and Your Honor had granted a preservation order that dealt with [forensic testing.]" The parties discussed the proposed methodology for testing the ballistics evidence and, because the issue was still under discussion, Judge Hardin concluded that there was no need to amend his previous order at that time:
 

 THE COURT: All right. Well, I don't see that I've got to alter the order at this point[.] ... So once you all have made that decision, if you want to prepare an order, I'll be glad to consider it.
 

 MR. PROCTOR: Okay.
 

 THE COURT: But at this point, I don't think there's anything that needs to be addressed further.
 

 Our Supreme Court has held that "a trial court has entered a judgment or order in a criminal case in the event that it announces its ruling in open court and the courtroom clerk makes a notation of its ruling in the minutes being kept for that session."
 
 State v. Miller
 
 ,
 
 368 N.C. 729
 
 , 738,
 
 783 S.E.2d 194
 
 , 200 (2016) (citing
 
 State v. Oates
 
 ,
 
 366 N.C. 264
 
 ,
 
 732 S.E.2d 571
 
 (2012) ). Accordingly, after Judge Hardin ruled that Ms. Mannette would represent defendant on the charge of first-degree murder and again when he ruled that the Rule 24 hearing would be continued, he specifically directed "Madame Clerk" to record his ruling. After resolving the matters discussed above, the court addressed Mr. Doyle about the charges on which he had asked to be removed as counsel:
 

 *552
 
 THE COURT: Okay. Now, with respect to the other pending charges of which Ms. Mannette does not represent the Defendant, I am aware that Mr. Doyle represents the Defendant in those items, but they are not related in any way to the homicide charge. Is that what you understand, Mr. Proctor?
 

 MR. PROCTOR: That's my understanding and my recollection.... I believe those matters are set for trial April 18th, so just to make sure everyone's on the same page with posture of those charges.
 

 THE COURT: But they have no relation to this homicide charge. That's what I want to make sure the record's clear about.
 

 MR. PROCTOR: That's-yes.
 

 ...
 

 THE COURT: Now, Mr. Doyle, you'd indicated earlier in the week that you'd had some discussions with Ms. Mannette and that she was willing to undertake the representation of Defendant in these other pending matters. And once-I miss recalling what the discussion was.
 

 MR. DOYLE: That's correct, Your Honor. And I believe Your Honor has those files in front of you.
 

 ...
 

 THE COURT: Okay.
 

 MR. DOYLE: My basic argument to Your Honor is that, as you know, Mr. Moore faces perhaps the ultimate penalty under our law and, therefore, I am particularly
 
 *203
 
 sensitive and cognizant to protecting his rights. And, also, for judicial economy, I think it makes more sense for Ms. Mannette to just be the air traffic controller of everything going on in his life right now. So I would move to withdraw and ask that you appoint Ms. Mannette to those files, as appropriate.
 

 MS. MANNETTE: ... Your Honor, ... just for the record, I've been speaking to Mr. Doyle about the posture of these cases. And my understanding is that they were heading towards a resolution on those cases. I will let the Court
 
 *553
 
 know that, if they are not able to come to a non-trial resolution, I certainly will not be prepared in a month to try those cases. I do want that on the record. I don't know that that's going to be an issue here, but I did want to put that on the record. I'll leave it in Your Honor's discretion, whether or not to grant this motion or we can continue to work together but on the separate cases.
 

 ...
 

 THE COURT: ... Mr. Proctor, now understanding what-the more nuanced version of where we are postured ... [d]o you want to be heard?
 

 MR. PROCTOR: My concern is-I mean, and it's really-I don't know how much standing the State has in regards to this-is that they are set for trial. If they were in an administrative posture, I would-I wouldn't voice any concern, essentially. But given that they're in trial posture, I don't know if we come [to] April 18th and the State's ready to proceed and Ms. Mannette's not, now-
 

 THE COURT: It's going to get continued. That's the bottom line.
 

 Defendant's contention that Judge Hardin ruled that the trial of these charges would be continued is based entirely upon the court's comment that "[i]t's going to get continued. That's the bottom line." For several reasons, we reject this argument.
 

 We note first that, unlike the instances discussed above, upon making this remark the court neither directed the clerk to make a notation nor stated that the case would be continued until a specific date. This is understandable, given that defense counsel stated that she did not expect to be ready for trial in a month, but did not make a motion for a continuance. As a result, the trial court was not presented with a specific question for resolution. Defense counsel's failure to make a motion for continuance is not a mere procedural technicality. Had defendant's counsel moved to continue the case, the court could have entertained opposing arguments on this question, during the course of which defendant's counsel would likely have been asked to explain why a month would not be sufficient time to prepare for trial. And, if the court had continued the case, the prosecutor would have had notice of the new trial date on which to secure the attendance of witnesses.
 

 *554
 
 In addition, Judge Hardin's statement that "[i]t's going to get continued" was, at most, an indication that at some future time the trial of the charges upon which Mr. Doyle represented defendant would be continued. However, the record is clear that Judge Hardin did not enter a continuance order or announce at the hearing that the case was being continued at that time. To the extent that defendant intends to argue that Judge Hardin was "ruling" that in the future the trial court would be required to continue the case, defendant has not cited any authority suggesting that one superior court judge may order that another judge enter a particular ruling in the future, regardless of the circumstances that may exist at that time.
 

 Moreover, a review of the transcript of the rest of the hearing makes it clear that Judge Hardin did not rule that the case would be continued, but specifically ordered that the charges would remain scheduled for April. After initially making the statement discussed above, the court questioned Mr. Doyle further about his request to withdraw as counsel. The court expressed concern about the possibility of further delay in the disposition of these charges:
 

 THE COURT: ... I guess what I'm not completely clear about is, Mr. Doyle, you've been a lawyer a long time. You're a very experienced litigator.
 

 MR. DOYLE: Thank you, Your Honor. I'm afraid I've been a lawyer a long time.
 

 *204
 
 THE COURT: ... So I'm trying to understand, given that this other set of cases that you represent him on are-they've got some age on them now, they're ready to be tried-why it's necessary that Ms. Mannette take a completely unrelated set of cases along with what she's already going to be handling, so.
 

 MR. DOYLE: I think, Your Honor, if he wasn't charged with first degree murder, that would make complete sense. But in light of the fact that I need to be so concerned about any admissions that I make on his behalf, we have had plea negotiations.... I hope I would not intentionally make any mistakes, but unintentional with the outcome on these other cases being so severe and it just doesn't-you know, the State keeps telling us court-appointed lawyers we've got to find every way to save cost. And it would just seem more efficient from a cost-wise [sic] to have one attorney represent him on all matters.
 

 *555
 
 THE COURT: ... [T]hat is a more hollow argument with me. Since you've already done the work, you're ready to try the case. It can be tried in April. And now Ms. Mannette has to get up to speed and spend hours on that second unrelated set of cases so that she's prepared to try it. I don't know that we're saving any cost there. So if that's the argument, I have some issue about it.
 

 ...
 

 MR. DOYLE: Well, the cases are-in terms, it's the first setting on the trial docket, Your Honor. I don't-from my discussions with Mr. Nieman over these last months, I don't get the impression that they're anywhere towards the stop-top of the trial calendar. As you know, I have a-I have a trial starting on March the 28th, and I am sure that I would not be able to do a quick turnaround and try this case, as well as another case in Chatham County that you set for trial for April 11th. So for me to do three jury trials in a 30-day period, I'm not able to do that as a solo practitioner.
 
 So in that sense, I guess I'm moving to continue these cases off the trial calendar, if we want to discuss that
 
 .
 

 THE COURT: Mr. Proctor, was there any other input you wanted to provide?
 

 MR. PROCTOR: Not other than I would just tell Your Honor, when Mr. Nieman and myself, along with the elected District Attorney, Mr. Woodall, discussed the fact that Mr. Moore has pending cases, Mr. Woodall's directive was just proceed on them as you normally would. They're unrelated. They're set in trial posture. So we're not going to treat them any differently and not-
 
 we're not going to just simply put them on the back burner and wait for the murder case to be resolved. So that would be the input from the State
 
 .
 

 (Emphasis added.)
 

 Thus, when Mr. Doyle moved to continue the trial of the charges on which he represented defendant in the event that he remained as defendant's counsel, the prosecutor argued that the State intended to proceed with the trial of these charges and opposed continuing the case until resolution of defendant's homicide charge.
 

 *556
 
 Judge Hardin then questioned defendant as to whether he wished for Ms. Mannette to represent him on the non-homicide charges, which the court referred to as the "unrelated drug charges":
 

 THE COURT: All right. Well, I've heard from all the lawyers now, but I hadn't heard from Mr. Moore as to what his choices are. Mr. Moore, please stand up.
 

 (The Defendant complied.)
 

 ...
 

 THE COURT: So until I make a decision about which lawyer represents you on the
 
 unrelated drug cases
 
 , Mr. Doyle is your lawyer. So if I ask you something you don't understand, discuss it with him. So long and short of it is, I'm willing to consider what your requests are regarding the appointment of counsel. Mr. Doyle, in essence, is asking that he be relieved from representing you in the
 
 unrelated drug cases
 
 and that Ms. Mannette be appointed. She's also making that request because they believe that it's to your benefit. Are you making that request, as well?
 

 DEFENDANT: Yes.
 

 (Emphasis added).
 

 *205
 
 After hearing from all parties, Judge Hardin entered his order with respect to appointment of counsel and expressly ruled that the trial of the non-homicide cases was not being continued:
 

 THE COURT: All right, Madam Clerk. In the Court's discretion, as it relates to cases 14 CRS 52224 and 15 CRS 51309 and 51310-in the Court's discretion, Mr. Doyle is relieved and is allowed to withdraw as counsel. Ms. Mannette is appointed as counsel and will handle these matters along with the homicide matter, to which she's already appointed.
 

 MR. DOYLE: I have a proposed order, if I may approach.
 

 THE COURT: Yes, sir.
 

 MR. DOYLE: Thank you.
 

 THE COURT: All right. As to the drug cases,
 
 they're still set in April. So if there's some issue we need to address further, I guess it can be done by whomever is-will be the presiding judge at that session of court
 
 .
 

 *557
 
 MS. MANNETTE: Okay.
 

 THE COURT: Madam Clerk, Ms. Mannette's the attorney of record in all these matters.
 

 MS. MANNETTE: Thank you, Judge.
 

 (emphasis added).
 

 We first note that during this hearing Judge Hardin referred generally to the charges on which Mr. Doyle was granted permission to withdraw as "the drug cases" in the plural. However, the cases at issue were charged in two court files charging the instant traffic offenses and a single court file charging what has been described as a drug-related case. Therefore, the court's reference to "cases" logically applies to all three of the court files, rather than to the single court file that charged a drug-related offense. Nonetheless, on appeal, defendant contends that in its order the court was intentionally making a distinction between the charge that the parties have described as drug-related and the other two files charging the traffic offenses that are at issue in this appeal. Defendant asserts that "[a]s to the offenses giving rise to this appeal, Judge Hardin stated: 'It's going to get continued. That's the bottom line.' " Defendant thus posits that the court specifically ruled that the traffic cases would be continued, but that the drug-related charge would not. We find no basis in the transcript for this contention.
 

 Prior to granting Mr. Doyle's motion to withdraw and appointing Ms. Mannette to represent defendant on the charges from which Mr. Doyle had asked to withdraw, Judge Hardin questioned defendant and also heard from Ms. Mannette, Mr. Doyle, and the prosecutor. At no time did any of those present make
 
 any
 
 reference to the fact that there were two types of charges involved, or draw any distinction between them. Specifically, Mr. Doyle asked to withdraw as counsel for all pending charges, without stating that they involved different offenses. When Judge Hardin indicated his concern about this, Mr. Doyle "mov[ed] to continue these cases off the trial calendar" without distinguishing among them. Ms. Mannette spoke to the court generally about "these cases" and made no reference to there being two categories of charges. In response, Judge Hardin made the comment that "[i]t's going to get continued" without distinguishing between the traffic charges and the drug-related case. The prosecutor stated that "they are set for trial" on 18 April 2016, and did not indicate that the trial date referred only to some of the pending charges. The prosecutor also told the court that he had been directed to proceed with the "pending cases" without regard to the first-degree murder charge lodged against defendant.
 

 *558
 
 We have carefully reviewed the transcript of this hearing and find
 
 no
 
 reference by any of the parties or the court making any distinction between the traffic charges and the drug-related offense. In fact, neither Mr. Doyle, Ms. Mannette, nor the prosecutor mentioned that the pending charges encompassed two categories of charges. As a result, the transcript fails to contain any basis upon which to find that any of those present intended that the traffic and drug charges be treated differently. Instead, all of the parties and the court treated the charges on which Mr. Doyle represented defendant as a unitary subject for resolution, and there is no
 
 *206
 
 dispute that all of the charges were set for trial in April 2016.
 

 Moreover, Judge Hardin's reference to the non-homicide charges as "drug cases" was
 
 not
 
 limited to the court's order allowing Mr. Doyle to withdraw. When the court addressed defendant on the subject of representation by counsel on all of the non-homicide cases, he characterized these charges as the "unrelated drug cases." We conclude that Judge Hardin's reference to "the drug cases" being "set in April" was an imprecise or inaccurate reference to all of the charges upon which Mr. Doyle had previously represented defendant.
 

 It is also significant that, in contrast to the court's earlier remark that "the bottom line" was that the case "was going to get continued," when Judge Hardin reached a final decision and entered an order, he directed the clerk to note his decision in the record. In his order, Judge Hardin specifically ruled that the cases were "still" set in April, indicating that he had decided
 
 not
 
 to continue them. The court also expressly stated that if other issues arose, which would include a future continuance motion, the resolution of those matters would be the responsibility of "the presiding judge at that session of court." We conclude that Judge Hardin did not enter an order or make a ruling that this case was continued; that the court expressly noted that the case was not continued and appropriately left future decisions in the hands of the trial judge; and that Judge Baddour did not overrule the order or ruling of another superior court judge by denying defendant's motion to continue.
 

 Moreover, defense counsel was present at this hearing and acknowledged Judge Hardin's ruling that she was appointed to represent defendant but that the cases were "still set in April." Under these circumstances, it would be unreasonable for defense counsel either to treat the court's initial comment as a "ruling" or to proceed on the assumption that there was "an understanding" that the traffic charges would be continued. Defendant is not entitled to relief on the basis of this argument.
 

 *559
 

 C. Defendant's Constitutional Right to Effective Assistance of Counsel
 

 On appeal, defendant argues that his "rights to due process, to the effective assistance of counsel, and to confrontation were violated." Defendant urges that prejudice from the denial of the continuance motion "should be presumed" and, quoting
 
 State v. Rogers
 
 ,
 
 352 N.C. 119
 
 , 125,
 
 529 S.E.2d 671
 
 , 675 (2000), contends that "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is remote." We have considered defendant's arguments and conclude that the trial court did not err by denying defendant's motion to continue, and that the facts of this case do not present the type of highly unusual situation in which prejudice should be presumed.
 

 The refusal to grant a continuance may, in certain factual circumstances, violate a defendant's constitutional rights. "The defendant's rights to the assistance of counsel and to confront witnesses are guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and by sections 19 and 23 of Article I of the Constitution of North Carolina. Implicit in these constitutional provisions is the requirement that an accused have a reasonable time to investigate, prepare and present his defense."
 
 State v. Tunstall
 
 ,
 
 334 N.C. 320
 
 , 328,
 
 432 S.E.2d 331
 
 , 336 (1993) (internal quotation omitted). "[T]he constitutional guarantees of assistance of counsel and confrontation of witnesses include the right of a defendant to have a reasonable time to investigate and prepare his case, but no precise limits are fixed in this context, and what constitutes a reasonable length of time for defense preparation must be determined upon the facts of each case."
 
 Searles
 
 ,
 
 304 N.C. at 153-54
 
 ,
 
 282 S.E.2d at 433
 
 (citation omitted). The Supreme Court of North Carolina has explained:
 

 To establish that the trial court's failure to give additional time to prepare constituted a constitutional violation, defendant must show "how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion." "[A] motion for a continuance should be supported by an
 
 *207
 
 affidavit showing sufficient grounds for the continuance." "[A] postponement is proper if there is a belief that
 
 material
 
 evidence will come to light and such belief is reasonably grounded on known facts." ... Continuances should not be granted unless the reasons therefor are fully established.
 

 State v. McCullers
 
 ,
 
 341 N.C. 19
 
 , 31-32,
 
 460 S.E.2d 163
 
 , 170 (1995) (quoting
 
 *560
 

 State v. Covington
 
 ,
 
 317 N.C. 127
 
 , 130,
 
 343 S.E.2d 524
 
 , 526 (1986),
 
 State v. Kuplen
 
 ,
 
 316 N.C. 387
 
 , 403,
 
 343 S.E.2d 793
 
 , 802 (1986), and
 
 State v. Tolley
 
 ,
 
 290 N.C. 349
 
 , 357,
 
 226 S.E.2d 353
 
 , 362 (1976) ) (emphasis in original).
 

 Thus, as a general rule, in order to obtain relief based on a court's denial of his motion for a continuance, a defendant must demonstrate that the trial court erred by denying the continuance and also that the defendant was prejudiced by the denial. However, where the record shows as a matter of law that defense counsel did not have an adequate time within which to prepare for effective representation of the defendant, our appellate courts have not required the defendant to show prejudice. For example, in
 
 Rogers
 
 , the Court stated that:
 

 While a defendant ordinarily bears the burden of showing ineffective assistance of counsel, prejudice is presumed without inquiry into the actual conduct of the trial when the likelihood that any lawyer, even a fully competent one, could provide effective assistance is remote. A trial court's refusal to postpone a criminal trial rises to the level of a Sixth Amendment violation only when surrounding circumstances justify this presumption of ineffectiveness.
 

 Rogers
 
 at 125,
 
 529 S.E.2d at 675
 
 (internal quotation omitted). Defendant argues that, as in
 
 Rogers
 
 , we should "presume" prejudice rather than examining the actual conduct of the trial. However, the facts of
 
 Rogers
 
 are easily distinguished from those of the present case. The opinion of our Supreme Court in
 
 Rogers
 
 addressed a situation in which the defense attorneys were appointed "to a case involving multiple incidents in multiple locations over a two-day period for which they had only thirty-four days to prepare" for the "bifurcated capital trial" of a "complex case involving ... many witnesses[.]" The Court expressly based its holding upon "the unique factual circumstances" of the case.
 
 Rogers
 
 ,
 
 352 N.C. at 125-26
 
 ,
 
 529 S.E.2d at 675-76
 
 . The instant case does not present the "unique factual circumstances" that were present in
 
 Rogers
 
 .
 

 Defendant argues that if we find that the trial court erred by denying his motion to continue, prejudice should be presumed. In support of this argument, defendant contends that (1) prior to trial, defense counsel failed to interview witnesses, review reports, or conduct research and thus was not prepared for trial, and that (2) defense counsel's failure to prepare for trial was based upon her "reasonable" reliance upon Judge Hardin's comment at the 9 March 2016 hearing. Defendant asserts that "[w]ithout inquiring into the conduct of the trial, based on the record established at the 9 March 2016 hearing, this Court should reverse the
 
 *561
 
 judgment and remand for a new trial." However, in examining the surrounding circumstances we must determine whether defense counsel had adequate time to prepare, rather than whether counsel used the time wisely:
 

 The question in this context is whether defendant had "ample time to confer with counsel and to investigate, prepare and present his defense," not whether the trial counsel properly used the time given to adequately investigate and prepare-that question is considered under the normal test for ineffective assistance of counsel.
 

 State v. King
 
 ,
 
 227 N.C. App. 390
 
 , 395,
 
 742 S.E.2d 315
 
 , 318-19 (2013) (quoting
 
 State v. Williams
 
 ,
 
 355 N.C. 501
 
 , 540,
 
 565 S.E.2d 609
 
 , 632 (2002) ). In this case, defendant has not articulated any argument related to the factual circumstances of this case to explain why a month was not sufficient time to prepare for trial. Instead, defendant essentially concedes that his trial counsel failed to prepare for trial, but attempts to justify this by reference to the court's comment that "the bottom line" was that "[i]t's going to get continued."
 

 As discussed in detail above, at the hearing on 9 March 2016 Judge Hardin did not continue the case or enter an order purporting to dictate that at some future date the trial court would be required to continue the case when it was called for trial. After
 
 *208
 
 initially making an informal comment suggesting an inclination to continue the trial of the various charges from which Mr. Doyle sought to withdraw as counsel, the court decided not to continue the case and entered an order clearly stating that the trial was still set for April 2016. In addition, the prosecutor made it clear at the March hearing that he would oppose a continuance. Thus, it was not reasonable for defense counsel to assume, on the basis of a remark that was not consistent with Judge Hardin's final ruling, that defense counsel would be granted a continuance on 18 April 2016. We conclude that defendant has failed to establish that the factual circumstances of the present case are such that prejudice should be presumed as a result of the denial of defendant's continuance motion.
 

 We further conclude that the trial court did not err by denying defendant's motion to continue. When the case was called for trial on 18 April 2016, defense counsel orally moved for a continuance, explaining that she had hoped to resolve the charges without a trial, but had learned that morning that defendant would not accept the State's plea offer. Defense counsel acknowledged that she had received discovery a month earlier, on the day she was appointed. She added, however, that
 
 *562
 
 there was a "lay witness" whom she had not interviewed, a suppression motion for which she had not conducted the necessary research, and other unspecified "motions in limine that need to be filed and argued." Defense counsel did not identify the witness or articulate any material factual issue upon which this witness might testify.
 

 Defendant's counsel also told the trial court that she had agreed to represent defendant "with the understanding" that if the parties could not reach a non-trial disposition, she "would not be prepared to try the case[.]" As discussed above, the record belies any suggestion that the parties had reached an "understanding" that the case would be continued. Nor did defendant's counsel proffer an explanation, other than her reliance upon Judge Hardin's comment at the earlier hearing, for her failure to interview the witness, to conduct the necessary research, to file the appropriate motions in limine, or to submit a properly supported written motion for continuance.
 

 N.C. Gen. Stat. § 15A-952(g)(2) directs a trial court to consider, in ruling on a motion for continuance, "[w]hether the case taken as a whole is so unusual and so complex ... that more time is needed for adequate preparation[.]" In this case, defendant did not argue at the pretrial hearing that the trial of these charges was unusual or complex. The charges lodged against defendant all arose from a single incident of high speed driving and the only factual issue that was seriously contested at trial was the identity of the driver. We conclude that the trial court did not err by denying defendant's motion to continue.
 

 Moreover, even assuming,
 
 arguendo
 
 , that it was error to deny defendant's motion to continue, defendant has failed to show any resultant prejudice. In his appellate brief, defendant does not identify specific factual issues that might have been resolved differently if his counsel been granted a continuance. Defendant contends, however, that "assuming
 
 arguendo
 
 that prejudice cannot be presumed, specific deficiencies show ineffective assistance of counsel." Thus, the prejudice that defendant has identified on appeal is his assertion that his counsel was ineffective at trial, based upon counsel's failure to prepare for trial. The standard for a claim of ineffective assistance of counsel (referred to by the acronym IAC) is well-established:
 

 To prevail in a claim for IAC, a defendant must show that his (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense, meaning counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 

 *563
 

 State v. Smith
 
 ,
 
 230 N.C. App. 387
 
 , 390,
 
 749 S.E.2d 507
 
 , 509 (2013) (applying the analysis of
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984) ),
 
 cert. denied
 
 ,
 
 367 N.C. 532
 
 ,
 
 762 S.E.2d 221
 
 (2014).
 

 In this case, defendant notes that prior to trial defense counsel had not interviewed an unspecified witness or reviewed police reports,
 
 *209
 
 that counsel failed to submit a signed affidavit in conjunction with a suppression motion, and that counsel failed to support the suppression motion or the motion to exclude admission of the convenience store surveillance video with citation to legal authority. As discussed elsewhere in this opinion, we conclude that the trial court did not err by denying defendant's suppression motion. We also conclude that the admission of the video, although error, was not prejudicial, and defendant does not argue that a continuance would have allowed defendant to obtain evidence that would have been relevant to our prejudice analysis. Therefore, even if counsel was ineffective by failing to file an affidavit with the suppression motion or to support the pretrial motions with citation to legal authority, defendant cannot show prejudice, given that we have concluded that the trial court reached the correct result on the suppression motion and that defendant was not prejudiced by the admission of the video.
 

 In regard to defense counsel's failure to interview a witness, defendant has not offered any argument pertaining to the significance of the unnamed witness or on whether counsel's performance "fell below an objective standard of reasonableness."
 
 Id
 
 . In addition, defendant's appellate arguments are premised upon his contention that it was reasonable for defense counsel to assume that the trial would be continued. As a result, defendant has not explored the possibility that his counsel was ineffective by failing to prepare for the possibility that the case would be tried on the scheduled date.
 

 "As a general proposition, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal."
 
 State v. Hernandez
 
 ,
 
 227 N.C. App. 601
 
 , 609,
 
 742 S.E.2d 825
 
 , 830 (2013) (internal quotation omitted). We conclude that at this juncture defendant's claim of ineffective assistance of counsel should be dismissed without prejudice to his right to raise it in a subsequent motion for appropriate relief. For the reasons discussed above, we conclude that defendant is not entitled to relief based upon the trial court's denial of his motion to continue.
 

 III. Admission of Video
 

 The admission of photographic and video evidence is governed by
 
 N.C. Gen. Stat. § 8-97
 
 (2015), which provides that:
 

 *564
 
 Any party may introduce a photograph, video tape, motion picture, X-ray or other photographic representation as substantive evidence upon laying a proper foundation and meeting other applicable evidentiary requirements. This section does not prohibit a party from introducing a photograph or other pictorial representation solely for the purpose of illustrating the testimony of a witness.
 

 N.C. Gen. Stat. § 8-97
 
 provides that a photograph may be introduced for either illustrative or substantive purposes. "Rule 901 of our Rules of Evidence requires authentication or identification 'by evidence sufficient to support a finding that the matter in question is what its proponent claims.' "
 
 State v. Murray
 
 ,
 
 229 N.C. App. 285
 
 , 288,
 
 746 S.E.2d 452
 
 , 455 (2013) (quoting N.C. Gen. Stat. § 8C-1, Rule 901 )).
 

 "Video images may be introduced into evidence for illustrative purposes after a proper foundation is laid.
 
 N.C. Gen. Stat. § 8-97
 
 (2015). The proponent for admission of a video lays this foundation with 'testimony that the motion picture or videotape fairly and accurately illustrates the events filmed (illustrative purposes).' "
 
 State v. Fleming
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 760
 
 , 764-65 (2016) (quoting
 
 State v. Cannon
 
 ,
 
 92 N.C. App. 246
 
 , 254,
 
 374 S.E.2d 604
 
 , 608-09 (1988),
 
 rev'd on other grounds
 
 ,
 
 326 N.C. 37
 
 ,
 
 387 S.E.2d 450
 
 (1990) ).
 

 In
 
 State v. Snead
 
 ,
 
 368 N.C. 811
 
 ,
 
 783 S.E.2d 733
 
 (2016), our Supreme Court addressed the requirements for introduction of a video as substantive evidence:
 

 Rule 901(a) requires that evidence be authenticated by showing "that the matter in question is what its proponent claims." N.C.G.S. § 8C-1, Rule 901(a) (2015).... Recordings such as a tape from an automatic surveillance camera can be authenticated as the accurate product of an automated process under Rule 901(b)(9).... Evidence that the recording
 
 *210
 
 process is reliable and that the video introduced at trial is the same video that was produced by the recording process is sufficient to authenticate the video and lay a proper foundation for its admission as substantive evidence.
 

 Snead
 
 , 368 N.C. at 814, 783 S.E.2d at 736 (internal quotation omitted).
 
 Snead
 
 held that the testimony offered at trial was sufficient to authenticate the video:
 

 ... [The witness's] testimony was sufficient to authenticate the video under Rule 901. [The witness] established
 
 *565
 
 that the recording process was reliable by testifying that he was familiar with how Belk's video surveillance system worked, that the recording equipment was "industry standard," that the equipment was "in working order" on 1 February 2013, and that the videos produced by the surveillance system contain safeguards to prevent tampering. Moreover, [the witness] established that the video introduced at trial was the same video produced by the recording process by stating that the State's exhibit at trial contained exactly the same video that he saw on the digital video recorder.... [The witness's] testimony, therefore, satisfied Rule 901, and the trial court did not err in admitting the video into evidence.
 

 Snead
 
 at 815-16, 783 S.E.2d at 737.
 

 In the present case, the evidence concerning the admissibility of the video consisted of the following. Officer Deshaies testified that the day after the incident giving rise to these charges, he asked the manager of the Kangaroo convenience store for a copy of the surveillance video made by cameras at the store. The manager allowed Officer Deshaies to review the video, but was unable to copy it. Officer Deshaies used the video camera function on his cell phone to make a copy of the surveillance footage, which was copied onto a computer. At trial he testified that the copy of the cell phone video accurately showed the contents of the video that he had seen at the store. The store clerk also reviewed the video, but was not asked any questions about the creation of the original video or whether it accurately depicted the events that he observed on 21 May 2015.
 

 A careful review of the transcript in this case reveals that no testimony was elicited at trial concerning the type of recording equipment used to make the video, its condition on 21 May 2015, or its general reliability. No witness was asked whether the video accurately depicted events that he had observed, and no testimony was offered on the subject. We conclude that the State failed to offer a proper foundation for introduction of the video as either illustrative or substantive evidence.
 

 On appeal, the State contends that the clerk "testified that the events contained on the video copy made by Officer Deshaies were an accurate portrayal of what he had seen on the original videotape and had witnessed within the store." This assertion is inaccurate. The clerk testified that defendant was shown on the video, but was not asked whether the video accurately depicted events he observed on 21 May 2015, and did
 
 *566
 
 not volunteer testimony of this nature. We hold that the trial court erred by admitting the video into evidence.
 

 We next consider whether the introduction of the video was prejudicial. Defendant did not object to the admission of the video on constitutional grounds. Regarding prejudice from errors that do not arise under the state or federal constitution, N.C. Gen. Stat. § 15A-1443(a) states that:
 

 A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.
 

 In this case, the primary issue for the jury to resolve was whether the State had shown beyond a reasonable doubt that defendant was the driver of the car that sped away from Officer Deshaies on 21 May 2015. In its appellate brief, the State argues that the video was admissible and does not address the issue of prejudice. Defendant argues
 
 *211
 
 that, absent the admission of the video there is a reasonable possibility that the jury would not have convicted him. We have considered the admission of the video in the context of the other evidence introduced at trial, and conclude that it was not prejudicial.
 

 The evidence, other than the video, that pertained to the issue of whether defendant was the driver, consisted of the following. Officer Deshaies testified that when the car pulled into the convenience store, he saw defendant getting out of the car on the driver's side. This was direct evidence that defendant was driving the car a few minutes before it sped away from the store. In addition, as discussed in detail below, at the time of his arrest defendant essentially confessed to having been the driver, and told the arresting officer "that the only reason he ran from officers the night of 5/21/2015 was because he had been drinking and did not want to deal with the driving while impaired charges." This statement was a direct admission of the fact that he was driving the car the night before, given that a passenger in the car would not be charged with impaired driving. The credibility of the officer to whom defendant made this admission was not seriously challenged. No evidence was offered tending to show that a person other than defendant was driving. However, defendant has pointed out that defendant was not the owner of the car and that the jury asked to review all of the videos during its
 
 *567
 
 deliberations, in support of his argument that admission of the video was prejudicial.
 

 We have evaluated the extent to which the video may have played a role in the jury's decision to convict defendant, particularly given that defendant essentially confessed to being the driver of the car. We conclude that defendant has failed to meet his burden of showing that there is a reasonable possibility that the jury would have failed to convict defendant absent the video evidence.
 

 IV. Denial of Suppression Motion
 

 Prior to trial, defendant moved to suppress the statements that he made to Officer Suitt while the officer was transporting him to the law enforcement center. The trial court conducted a hearing on defendant's suppression motion on the day that the trial began and denied defendant's motion. On appeal, defendant argues that his statements were made in response to police interrogation or its functional equivalent, in violation of his right under the Fifth Amendment to the United States Constitution to avoid self-incrimination. We disagree.
 

 In
 
 Miranda v. Arizona
 
 ,
 
 384 U.S. 436
 
 , 444,
 
 86 S.Ct. 1602
 
 , 1612,
 
 16 L.Ed.2d 694
 
 , 707 (1966), the United States Supreme Court held that:
 

 [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.... Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.
 

 "The rule of
 
 Miranda
 
 requiring that suspects be informed of their constitutional rights before being questioned by the police only applies to custodial interrogation."
 
 State v. Brooks
 
 ,
 
 337 N.C. 132
 
 , 143,
 
 446 S.E.2d 579
 
 , 586 (1994).
 
 Miranda
 
 also held, as relevant to the present case, that "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."
 
 Miranda
 
 ,
 
 384 U.S. at 478
 
 ,
 
 86 S.Ct. at 1630
 
 ,
 
 16 L.Ed.2d at 726
 
 .
 

 In the present case, there is no dispute that when defendant made the inculpatory statements to Officer Suitt he was in custody and had not been apprised of his
 
 Miranda
 
 rights. Thus, the dispositive issue is whether defendant was subjected to interrogation. "The Supreme Court
 
 *568
 
 has defined the term 'interrogation' as follows: 'Any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect.' "
 
 State v. Brewington
 
 ,
 
 352 N.C. 489
 
 , 503,
 
 532 S.E.2d 496
 
 , 504 (2000) (quoting
 
 Rhode Island v. Innis
 
 ,
 
 446 U.S. 291
 
 , 301,
 
 100 S.Ct. 1682
 
 , 1689-90,
 
 64 L.Ed.2d 297
 
 , 308 (1980) ).
 
 *212
 
 In this case, defendant made inculpatory statements after being arrested and while being transported to the law enforcement center. These statements were made in response to a question from Officer Suitt's supervising officer over the police radio. At the hearing on defendant's suppression motion, Officer Suitt testified as follows:
 

 MR. PROCTOR: Okay. And what happened next [after defendant was secured in the patrol vehicle]?
 

 OFFICER SUITT: ... [W]e were en route to the police department and Mr. Moore heard-my lieutenant was asking about the vehicle, maybe see if we could locate the vehicle. He asked if Mr. Moore had said anything about where the vehicle was located. Well, obviously the speaker in my patrol car, anybody can hear that's inside the car. Mr. Moore stated that we wouldn't find the vehicle, it was possibly in a secret spot, as stated in-in the report.
 

 MR. PROCTOR: Okay. And to be clear, was that in response to any question that was being asked of him?
 

 OFFICER SUITT: It was not. I did not ask him any questions. I believe it would be in response to my supervisor, lieutenant, asking the question over the radio to me "Did he say anything about where the car was located?" And his response was in response to that.
 

 MR. PROCTOR: Okay. What happened next?
 

 OFFICER SUITT: Still en route to the police department, Mr. Moore stated, as I put in the report, that the only reason that he ran from officers the night prior was because he didn't want to get the impaired driving charge, the DWI.
 

 MR. PROCTOR: Okay. Do you remember with any specificity what he said? You can use your report, if necessary.
 

 OFFICER SUITT: Yeah, just-I'll read it straight from-from the report.... "Mr. Moore went on to advise me he ran from ... officers on 5/21/15 [ ] because he had been
 
 *569
 
 drinking and did not want to deal with the driving while impaired charge."
 

 MR. PROCTOR: Okay. And was that statement made in response to any questions that you posed to him?
 

 OFFICER SUITT: No, I did not ask any questions. And the reason I did not ask him any questions, I had not Mirandized him any-in any way because I had no intentions on asking any questions.
 

 Based upon this testimony, the trial court found that defendant's statements were "spontaneous utterances" that were "not made in response to questions posed to him by law enforcement" and that "defendant's statement in response to a radio communication by a law enforcement officer
 
 to Suitt
 
 cannot be interpreted to be an interrogation or questioning of defendant." (emphasis in original). The court concluded that "[d]efendant's statements were not coerced, and were not obtained in violation of his constitutional rights."
 

 The thrust of defendant's appellate argument is that Officer Suitt should have known that the conversation between Officer Suitt and another officer would be reasonably likely to elicit an incriminating response. Defendant asserts that defendant had a reasonable "perception that he was expected to participate in the conversation" initiated over the police radio by Officer Suitt's superior officer. Defendant also notes that before Officer Suitt turned off the video recording in the patrol car, he asked defendant where he had been walking. There is no indication in the record that defendant answered this question. Moreover, defendant's inculpatory statements did not pertain to his walk on the morning of his arrest.
 

 Defendant has not directed our attention to appellate jurisprudence in which the court held that a brief exchange between two law enforcement officers was the functional equivalent of interrogation, and we note that in the leading case on this issue,
 
 Rhode Island v. Innis
 
 ,
 
 446 U.S. 291
 
 ,
 
 100 S.Ct. 1682
 
 ,
 
 64 L.Ed.2d 297
 
 (1980), the Supreme Court rejected a similar argument. In
 
 Innis
 
 , the defendant was arrested for a homicide. During the drive to the law enforcement center, the officers who had arrested defendant discussed the fact that the firearm used in the murder had not been located, and expressed concern about the possibility that a handicapped child might find the weapon and
 
 *213
 
 harm himself. Defendant interrupted the officers' conversation and offered to show them where the gun was located. On appeal, the defendant argued that the officers' discussion was the equivalent of an interrogation. The Supreme Court
 
 *570
 
 first enunciated the standard for determining when a defendant is subjected to interrogation:
 

 We conclude that the
 
 Miranda
 
 safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under
 
 Miranda
 
 refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect.... But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.
 

 Innis
 
 ,
 
 446 U.S. at 301
 
 ,
 
 100 S.Ct. at 1689-90
 
 ,
 
 64 L.Ed.2d at 307-08
 
 . The Court then applied this standard to the facts of
 
 Innis
 
 , and held that the conversation conducted by the officers in the defendant's presence did not constitute the equivalent of an interrogation:
 

 [W]e conclude that the respondent was not "interrogated" within the meaning of
 
 Miranda
 
 .... [T]he conversation between [the officers] included no express questioning of the respondent. Rather, that conversation was, at least in form, nothing more than a dialogue between the two officers to which no response from the respondent was invited. Moreover, it cannot be fairly concluded that the respondent was subjected to the "functional equivalent" of questioning. It cannot be said, in short, that [the officers] should have known that their conversation was reasonably likely to elicit an incriminating response from the respondent.
 

 Innis
 
 at 302,
 
 100 S.Ct. at 1690
 
 ,
 
 64 L.Ed.2d at 309
 
 . We find
 
 Innis
 
 to be functionally indistinguishable from the present case. Indeed, the officers' conversation in
 
 Innis
 
 was more likely to elicit a response from the defendant, given the emotional tone of the officers' concern for the safety of a child, than would the question asked over the police radio in the presence of this defendant in the present case.
 

 We have also considered the holding of our Supreme Court in
 
 State v. DeCastro
 
 ,
 
 342 N.C. 667
 
 ,
 
 467 S.E.2d 653
 
 (1996). In
 
 DeCastro
 
 , the defendant was arrested on charges of robbery and murder and was taken to
 
 *571
 
 the law enforcement center, where an officer took possession of the defendant's clothing and personal effects. This officer asked another law enforcement officer who was present whether defendant could retain custody of money that was in his possession. Defendant overheard and volunteered that he "had some of my own money, too" a statement that supported the charge of robbery.
 
 DeCastro
 
 ,
 
 342 N.C. at 678
 
 ,
 
 467 S.E.2d at 658
 
 . On appeal, defendant argued that "the detective's question, made in defendant's presence while he was in police custody, could have been perceived by defendant as seeking a response" and was therefore "the functional equivalent of police interrogation in violation of his constitutional rights."
 
 DeCastro
 
 at 683,
 
 467 S.E.2d at 661
 
 . Our Supreme Court rejected this argument, holding that defendant's statement "was not the result of interrogation in derogation of defendant's right to have an attorney present during questioning. The question by Detective Berube regarding whether defendant could keep the money from his pocket was not directed to defendant, but to Agent McDougall."
 
 DeCastro
 
 at 684,
 
 467 S.E.2d at 661
 
 . We conclude that defendant has failed to show that he was subjected to the functional equivalent of an interrogation, and that the trial court did not err by denying his motion to suppress.
 

 V. Conclusion
 

 For the reasons discussed above, we conclude that the trial court did not err by denying defendant's motion to continue or his motion to suppress the statements he made to Officer Suitt, but that the trial court erred by admitting into evidence the cell phone copy of a surveillance video from the convenience store. We hold, however, that given the strength of the other evidence offered by the
 
 *214
 
 State, this error was not prejudicial to defendant.
 

 NO ERROR IN PART, NO PREJUDICIAL ERROR IN PART.
 

 Judges BRYANT and INMAN concur.