An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-991

Filed 20 August 2025

Durham County, No. 23 CR 296185-310

STATE OF NORTH CAROLINA

v.

JANESSIA MICHELLE BROWN

Appeal by defendant from judgment entered 20 February 2024 by Judge Brenda G. Branch in Durham County Superior Court. Heard in the Court of Appeals 31 July 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Charles G. White, for the State.*

> *King & Moss, PLLC, by John W. Moss, for defendant.*

PER CURIAM.

The issue on appeal is whether the trial court erred in admitting into evidence video surveillance footage ("Exhibit 5") from a car wash. For the following reasons, we find no error.

I.     Background

On 4 March 2023, Brandi Hunt, her boyfriend Eugene Clayton, her aunt, and

her two-year-old son went to a car wash in Durham, North Carolina. {T 125-26} Hunt sat in the passenger seat, while Clayton drove. {T 126-27} A McDonald's was located next to the car wash. {T 126} As Hunt and the others exited the vehicle, defendant ran up from a car at the McDonald's drive-thru and leaped into the passenger side of the car, trying to get at Clayton. {T 127} When she could not reach him, she began hitting Hunt in the face. {T 127} Defendant's friends, who had been with her at McDonald's, helped Clayton and the aunt pull defendant off Hunt. {T 128} A few days later, Hunt's left eye had swollen shut, so she went to the emergency room and was treated for a fracture to the orbital bone. {T 131-32}

Eventually, Hunt reported the incident to the police. {T 134} Along with her report, she provided a recording of a phone call allegedly between defendant and Clayton. {T 138-39} Although the parties disagreed on the validity of the phone call, the evidence tended to show that defendant called Clayton a few days after the incident. {T 166} They were previously involved romantically, and defendant testified to an ongoing dispute between them regarding the paternity of her child. {T 242, 245} In the recording, Clayton referred to the caller as "Neesha," a nickname only he used for defendant. {T 247} The recorded dialogue included what appeared to be defendant's admission to the assault: {T 166-69; State Ex. 3}

> Clayton: Neesha, you ain't have to punch that girl in the face.
>
> Caller: No, I didn't. I didn't have to do s*** to her. But she—I wanted to talk to you, and I couldn't get to you, so

she had to take them licks.

Investigator Joel Turner of the Durham Police Department was assigned to the case. **{T 196}** On 15 March 2023, he visited the car wash and watched surveillance footage of the incident. **{T 201}** When he was unable to download the video, Turner asked William McFadyen, Digital Forensics Supervisor for the police department, to retrieve it. **{T 201}** Relevant questioning of McFadyen by the State prosecutor included:

> McFadyen: The video that [Turner] requested . . . was a Avert X Digital Video Recorder. I was able to copy the video from the video recorder onto a flash drive. I then took the flash drive back to my office and put it in—what we have is Foray; it is a digital storage for our video and pictures.
>
> State: And can you describe how you upload the video to Foray?
>
> McFadyen: The video is, like I said, downloaded onto a flash drive. Once I get back to the office—it is cloud based through the web—so the video was uploaded through the web into the storage.
>
> . . .
>
> State: Did you alter or change the video in any way?
>
> McFadyen: I did not.
>
> State: Can the video be altered after being uploaded to Foray?
>
> McFadyen: One it's in Foray, it cannot be altered. It can be viewed, and it can be downloaded out of Foray, but it cannot be changed once it's in there. **{T 192-93}**

Both Turner and McFadyen rewatched the video ("Exhibit 5") during the trial and confirmed that it was the same, unaltered footage they viewed in March. **{T 194, 202-03}** Defendant did not object to admission of the video surveillance footage during the trial. **{T 206}**

The jury found defendant guilty of assault inflicting serious injury, but not guilty of assault inflicting serious bodily injury. She was sentenced to sixty-days in jail, suspended with ten days in active confinement and twenty-four months of probation. **{R 31, 34-38}** Defendant orally appealed on 20 February 2024. **{R 39}**

## II.     Discussion

Defendant argues that Exhibit 5 lacked sufficient foundation to be admitted into evidence. As she did not object during the trial, review is limited to plain error. N.C. R. App. P. 10(a)(4); *see State v. Reber*, 386 N.C. 153, 157, 900 S.E.2d 781, 785 (2024). The burden of proof is on defendant to show that (1) "a fundamental error occurred at trial"; (2) "absent the error, the jury probably would have returned a different verdict," resulting in prejudice; and (3) the error is an "exceptional case" which affects "the fairness, integrity or public reputation of judicial proceedings." *Reber*, 900 S.E.2d at 786–87.

Surveillance footage may be admitted into evidence "upon laying a proper foundation" for illustrative or substantive purposes. N.C. Gen. Stat. § 8–97. Rule 901 of the Rules of Evidence requires "authentication or identification . . . by evidence sufficient to support a finding that the matter in question is what its proponent

claims." N.C. Gen. Stat. § 8C–1, Rule 901. In reviewing the foundation for admissibility of a videotape, this Court generally considers the maintenance and operational ability of the taping system, the accuracy of the events depicted, and the chain of custody of the video. *State v. Jones*, 176 N.C. App. 678, 683, 627 S.E.2d 265, 268 (2006) (quoting *State v. Mason*, 144 N.C. App. 20, 26, 550 S.E.2d 10, 15 (2001). "Evidence that the recording process is reliable and that the video introduced at trial is the same video that was produced by the recording process is sufficient to authenticate the video and lay a proper foundation for its admission as substantive evidence." *State v. Snead*, 368 N.C. 811, 814, 783 S.E.2d 733, 736 (2016).

After careful review of the record and transcript, we conclude that there is no plain error. First, the witness testimony of McFadyen and Turner lays a proper foundation for the video's admission into evidence. McFadyen provided a description of the equipment used at the car wash, detailed how he retrieved the footage, accounted for its chain of custody, and verified that it had not been altered. Turner also confirmed that the video presented to the jury was the same footage he had seen at the car wash. *See State v. Jones*, 288 N.C. App. 175, 188, 884 S.E.2d 782, 793–94 (2023) [hereinafter *Jones II*] ("[V]ideo surveillance can be authenticated by a witness testifying the video 'accurately depicted events that he had observed.' " (internal citations omitted))*; see also Snead*, 368 N.C. at 814, 783 S.E.2d at 736; *State v. Fleming*, 247 N.C. App. 812, 817, 786 S.E.2d 760, 765–66 (2016) (concluding that an investigating officer's testimony on the functionality of the video system was

sufficient authentication). In addition, the two other witnesses, Hunt and Clayton, corroborated the content of the video with their congruous descriptions of the incident. *See Jones II*, 288 N.C. App. at 188, 884 S.E.2d at 794 ("[T]he fact that [the witness'] description matched the footage proves further support for the reliability of the surveillance footage . . . .").

Defendant argues that the trial court plainly erred by admitting Exhibit 5 into evidence because no witness testified to the reliability of the camera system or the condition of the video. We disagree. The mere lack of witness testimony to the equipment's functionality does not constitute plain error without more. *Jones*, 176 N.C. App. at 682, 627 S.E.2d at 268. In *Jones*, this Court held that defendant must show that if she had objected on the grounds of authentication to the admission of a videotape during the trial, the State would not have been able to supply the necessary foundation. *Id.* "Since defendant has made no showing that the foundational prerequisites . . . could not have been supplied and pointed to nothing suggesting that the videotape in this case is inaccurate or otherwise flawed," we cannot conclude that there was a fundamental error or that this is an "exceptional case" of injustice. *Id.* at 684, 627 S.E.2d at 269.

Further, defendant has failed to meet her burden of showing that the jury probably would have failed to convict, absent the video evidence. In *State v. Moore*, the defendant was found guilty of various crimes after initiating a high-speed car chase in an attempt to avoid arrest. *State v. Moore*, 254 N.C. App. 544, 545, 803

S.E.2d 196, 199 (2017). Video surveillance from a gas station showed the defendant getting into the same car engaged in the chase. *Id.* Although the court concluded that the State failed to offer a proper foundation for the video's admission into evidence, the defendant's own confession to the crime undermined this fact. *Id.* at 566, 803 S.E.2d at 211. Therefore, the court ultimately held that the admission of the video was non-prejudicial and did not constitute plain error. *Id.*

Here, the recorded phone call between defendant and Clayton functions as a recorded admission to the assault. As in *Moore*, this undermines the plain error argument of prejudice. *See also Snead*, 368 N.C. at 815 ("Given that defendant freely admitted that he is one of the two people seen in the video [committing the crime], he offered the trial court no reason to doubt the reliability or accuracy of the footage contained in the video.") The State also adduced ample other evidence of defendant's guilt, including eyewitness testimony by Hunt and Clayton which perfectly described the content of the video prior to its presentation in the courtroom.

Thus, we hold that admission of the video was not prejudicial.

## III.    Conclusion

As we are unpersuaded by the assertion that the footage is unreliable and do not think it probable that the jury would have returned a different result, we conclude that there is no plain error.

NO ERROR.

Panel consisting of Judges ARROWOOD, STADING, and MURRY.

Report per Rule 30(e).